# United States Court of Appeals for the Federal Circuit

---

**ROBERT J. KLIPP,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2021-1386

---

Petition for review of the Merit Systems Protection Board in No. DA-0842-20-0192-I-1.

---

Decided: May 19, 2022

---

JEFFREY H. JACOBSON, Jacobson Law Firm, Tucson, AZ, argued for petitioner.

DAVID MICHAEL KERR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, MARTIN F. HOCKEY, JR.

---

Before DYK, REYNA, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge*.

Robert Klipp appeals a decision of the Merit Systems Protection Board ("Board") denying his request for retroactive law enforcement officer ("LEO") retirement coverage for the period June 7, 2005, until November 22, 2009.  In assessing whether Mr. Klipp was entitled to primary LEO credit for that period, the Board did not properly analyze whether fifty percent or more of Mr. Klipp's actual duties were LEO duties under our decision in *Crowley v. United States*, 398 F.3d 1329 (Fed. Cir. 2005).  That was error, and we vacate and remand to the Board for proceedings consistent with this opinion.

## BACKGROUND

### I

The Federal Employees' Retirement System Act provides early retirement benefits to federal LEOs.  *See* 5 U.S.C. § 8412(d).  LEOs are eligible to receive early retirement benefits after completing either 25 years of service as a law enforcement officer or 20 years of service after reaching 50 years of age ("LEO credit").  *See id.*  An employee requesting credit for past service "must submit a request for a determination" to the employing agency.  Off. of Pers. Mgmt., Special Retirement Provisions for Law Enforcement Officers, Firefighters, Air Traffic Controllers, and    Military    Reserve    Technicians,    § 46A3.2-3, https://www.opm.gov/retirement-services/publications-for ms/csrsfers-handbook/c046.pdf.  If credit is denied, the employee may seek review at the Board.  5 C.F.R. § 842.807(a).  LEO credit may be awarded for time served in either a primary or secondary law enforcement position.

Primary law enforcement positions earning credit are those in which an employee's duties are primarily "the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or [] the protection of officials of the United States against threats to personal safety," and the duties    are    "sufficiently    rigorous    that    employment

opportunities should be limited to young and physically vigorous individuals." 5 U.S.C. § 8401(17)(A)(i), (ii).

Credit may also be awarded for time served in a secondary, "supervisory or administrative position" if an employee is "transferred directly" to that position after serving in a primary position "for at least three years." § 8401(17)(C); *see* 5 C.F.R. § 842.803(b). A direct transfer from a primary to a secondary role is one that occurs "without a break in service exceeding 3 days." 5 C.F.R. § 842.803(b)(1)(i).

## II

Mr. Klipp worked for the Department of Homeland Security, Transportation Security Administration ("TSA" or "the agency") from August 1991 until November 2009. In a parallel case, Mr. Klipp challenges the agency's classification of the position he held from April 1998–July 2004 as a non-LEO position. Those proceedings began in July 2008, when Mr. Klipp first requested retroactive LEO coverage for his entire career with DHS. The agency in October 2016 determined that Mr. Klipp was entitled to LEO credit for the period 1991–98, but not for the period 1998–2008. An Administrative Judge ("AJ") affirmed the agency's decision, holding that: (1) Mr. Klipp's 1991–1998 position was eligible for primary LEO credit; (2) his 1998–2004 position was a non-LEO position; and (3) his 2004–2009 position was not eligible for LEO credit, despite the parties' stipulation that it was properly classified as a secondary position, because there was a more-than-three-day break in service between his primary position ending in 1998 and his secondary position beginning in 2004.

Mr. Klipp sought review of that decision by the full Board in September 2017, and that case is currently pending before the Board. The sole issue in that case is ultimately whether Mr. Klipp was entitled to LEO credit for the period 1998–2004 because the parties stipulated to a secondary classification for the period 2004–2009.

Thereafter, in March 2019, Mr. Klipp commenced the proceedings underlying this appeal. Before the agency, Mr. Klipp sought primary LEO credit from DHS for his post-2004 position (in contrast to the earlier proceedings, in which he sought secondary credit). Confusingly, although Mr. Klipp's original request to the agency claimed that he was entitled to LEO credit for July 2004 through November 2009, his appeal to the MSPB sought credit only for June 7, 2005, through November 22, 2009 ("the relevant period"). We treat the June 2005 date as the relevant date for purposes of Mr. Klipp's appeal.

In July 2004, nearly one year before the relevant period, TSA hired Mr. Klipp to serve as a Supervisory Criminal Investigator/Assistant Federal Security Director-Law Enforcement ("AFSD-LE") for the New Orleans International Airport ("MSY"). Supervisory Criminal Investigators "[d]irect[] the work of subordinate law officers and investigators who administer laws, regulations, and policy pertaining to airport security." J.A. 58.

According to Mr. Klipp, after TSA hired him for the Supervisory Criminal Investigator role, the government never hired subordinate law enforcement officers or criminal investigators for him to supervise. The government's Standard Form 50 ("SF-50"), dated December 9, 2005, and entitled "Notification of Personnel Action," reflects a coincident change in Mr. Klipp's position title from "supervisory" criminal investigator to "nonsupervisory" criminal investigator, and the government confirmed that Mr. Klipp "did not supervise any individuals" in his role at MSY during the relevant period. J.A. 167. The government nonetheless insisted that Mr. Klipp did not serve as a criminal investigator during the relevant period, but instead served as an AFSD-LE, the position title reflected on his retroactively corrected employment documents. *See* J.A. 177 (2006), 180 (2007), 181 (2008), 183 (2009).

Mr. Klipp does not contend that the official position description (AFSD-LE) entitles him to primary LEO credit. Instead, he argues that LEO credit can be awarded if the applicant's actual duties were primarily LEO duties, even if the position description denotes a secondary position. Mr. Klipp applied for retroactive retirement coverage based on the theory that the actual duties of his position during the relevant period entitled him to primary LEO credit. He presented this argument in a March 4, 2019, email to the agency, requesting "a fair review of [his] criminal investigator time from July 2004 through November 2009" to assess whether he occupied "a primary law enforcement position." J.A. 41.

That request was denied in a January 24, 2020, email from TSA. The agency took the position that "regardless" of the actual duties of Mr. Klipp's position, those duties "did not alter the classification of the position as secondary." J.A. 38. The agency head issuing the decision also informed Mr. Klipp as follows:

> I note that while you did not raise a question about your service as an AFSD-LE as primary in your MSPB appeal, your assertion is based on the same period of service and facts which were already addressed in the Determination letter issued to you in October 2016. It is the Agency's position that no additional decision or determination is necessary. Although you have already filed an appeal on the Determination, and have a petition for review (PFR) pending, if you believe you are eligible to file another appeal with the MSBP you may do so by filing with the MSPB within thirty (30) days of the effective date of this action or within thirty (30) days of the date of this letter, whichever is later.

*Id.*

Mr. Klipp timely appealed the agency's decision to the Board, which the AJ affirmed on November 16, 2020. He

then appealed that decision to this court instead of seeking review by the full Board. The AJ's decision became the decision of the Board. We have jurisdiction pursuant to 5 U.S.C. § 1295(a)(9).

DISCUSSION

We must set aside any "action, findings, or conclusions [of the Board] found to be" either "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

I

The MSPB has jurisdiction to review a "final decision of an agency head denying an individual's request" for LEO credit. 5 C.F.R. § 842.807(a). The government first argues that the Board lacked the authority to adjudicate Mr. Klipp's appeal. That is so, according to the government, because the agency's January 2020 email was not a final, appealable decision by DHS—it was merely a "denial of a request for reconsideration of" the agency's October 2016 decision. Gov't Br. at 21. Mr. Klipp disagrees with the government's characterization of the agency's January 2020 decision, claiming instead that it was "on its face a denial of a <u>new</u> request for coverage," namely, a request for primary LEO credit for his 2004–2009 service. Klipp Reply Br. at 6.

The Board held that it had jurisdiction because the agency's email was "a final decision under 5 C.F.R. § 842.807(a)." J.A. 8. The Board explained that the agency's January 2020 decision "denied" Mr. Klipp's first and only request to receive primary LEO credit for his 2004–2009 employment and also highlighted the fact that the email "provided [Mr. Klipp] with Board appeal rights." *Id.*

We agree that the Board had jurisdiction. The agency's January 2020 email was a final, appealable decision—it was a denial of Mr. Klipp's request for his 2004–2009 position to be classified as a primary position. The government's "reconsideration" theory is untenable because Mr. Klipp had never requested primary LEO credit for this position prior to 2019. In the parallel proceedings, Mr. Klipp and the government have always stipulated to the fact that his position was a secondary role. It was therefore proper for the Board to exercise jurisdiction over Mr. Klipp's new request for classification of his position as primary.

## II

The regulations under the statute describe what is required to establish the right to primary LEO credit. To show that Mr. Klipp is entitled to primary LEO credit for the relevant period, he had to prove by a preponderance of the evidence, 5 C.F.R. § 1201.56(b)(2)(ii), that he occupied a "rigorous position whose primary duties [were] the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or the protection of officials of the United States against threats to personal safety," 5 C.F.R. § 842.802. Employees "whose primary duties involve maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States" are not entitled to primary LEO credit. *Id.*

Primary duties are those that: "(a) [a]re paramount in influence or weight; that is, constitute the basic reasons for the existence of the position; (b) [o]ccupy a substantial portion of the individual's working time over a typical work cycle; and (c) [a]re assigned on a regular and recurring basis." *Id.* "In general, if an employee spends an average of at least 50 percent of his or her time performing a duty or

group of duties, they are his or her primary duties."[1] *Id.* The regulations also require that the position be "so rigorous that employment opportunities should, as soon as reasonably possible, be limited (through establishment of a maximum entry age and physical qualifications) to young and physically vigorous individuals." *Id.*

This entitlement inquiry requires consideration of both the position description and the employee's actual duties. In the first instance, the Board must base its determination on the "official documentation of the position" promulgated by the government. *Crowley*, 398 F.3d at 1340. If the position "fails to qualify for LEO status" based on those official description documents, the Board "must afford the employee the opportunity to show that" the actual duties of their position are sufficient to establish LEO status, given that "agencies will not always keep job descriptions current to match the actual activities of the individuals who occupy described positions." *Id.* Mr. Klipp's request for LEO credit is based solely on the actual duties of his position.

In *Crowley*, we held that "two major factors [] should be considered in determining whether a position should be conferred LEO status" based on its actual duties. *Id.* at 1339. These two factors are "physical vigorousness" and "hazardousness." *Id.* "Physical vigorousness," the first and most important factor, is assessed by evaluating (in order of importance): whether the position has "(1) strenuous physical fitness requirements; (2) age requirements (such as a mandatory retirement age or a maximum entry age); [and] (3) a requirement that an employee be on call twenty-four hours a day." *Id.*

If the court concludes that the position is sufficiently vigorous, "then the second major factor necessary to

---

[1] "[E]mergency, incidental, or temporary" duties, "even if they meet the substantial portion of time criterion," "cannot be considered 'primary.'" 5 C.F.R. § 842.802.

establish LEO status—hazardousness—must be considered." *Id.* A finding that a position is hazardous depends on whether it (again, in order of importance): (1) "requires frequent and consistent contact with criminal suspects on the part of the employee (including interrogation of suspects and pursuit or detention of criminals)"; and (2) "authorizes the employee to carry a firearm." *Id.* Here, it is undisputed that Mr. Klipp was authorized to carry a firearm, so the focus is on the first hazardousness factor. In this respect, the record must show that "fifty percent or more of [the employee's] actual duties" involved "frequent and consistent contact with criminal suspects." *Id.* at 1339–40.

Whether the record here would support a finding that Mr. Klipp does not qualify for primary LEO credit, the "agenc[y] ha[d] a duty to provide" the court "with a sufficient explanation for [its] decision[] so that [the] decision[] may be judged against the relevant statutory standards." *Mullins v. Dep't of Energy*, 50 F.3d 990, 992 (Fed. Cir. 1995). We agree with Mr. Klipp that the Board's decision failed to adequately address his actual duties in a way that would enable court of appeals review.

First, the Board failed to separately discuss the question of vigorousness in addition to assessing hazardousness, as was required under *Crowley*.

The second error in the Board's decision lies in its reliance on position descriptions as evidence of Mr. Klipp's actual duties for purposes of addressing hazardousness and its failure to separately address his actual duties. After correctly identifying the need to review Mr. Klipp's "actual duties . . . to determine whether he is entitled to LEO retirement credit in a [primary] position," J.A. 18, the Board continued to consider evidence of both the position description and actual duties in a single step, and it reached its final conclusion—that Mr. Klipp failed to "establish[] by preponderant evidence [that] *his position was created for*

the purpose of the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or the protection of officials of the United States against threats to personal safety"—"*[b]ased on all the evidence*." J.A. 20 (emphasis added).

But our precedent is clear that the Board must make two independent findings: the first must be based on the position description evidence alone, and if that finding is adverse to the employee, the second must be based solely on evidence of his or her actual duties. Concluding that Mr. Klipp failed to establish that "his position *was created*" for a primary law enforcement purpose did not address whether, in light of his actual duties, he established that fifty percent or more of those duties were primary LEO duties.

Third, in assessing hazardousness, the Board made seemingly contradictory findings as to Mr. Klipp's actual duties. The Board's decision explained:

> Even if the appellant frequently and regularly performed the duties of a primary covered position, these situations were of an emergency, incidental, or temporary nature. Such situations, even if the appellant spent a substantial portion of time on such duties, cannot be the basis for primary coverage, pursuant to 5 C.F.R. § 842.802.

J.A. 20–21.

It is contradictory to conclude that Mr. Klipp's primary LEO duties were merely "emergency, incidental, or temporary" while also concluding that he "frequently and regularly performed the duties of a primary covered position." *Id.* Moreover, the Board observed that one of Mr. Klipp's coworkers, who began working with him in August 2008, testified that Mr. Klipp "spent at least 50 percent of his time pursuing criminal investigations." J.A. 19. And

under our precedent, if those regularly performed primary duties constituted fifty percent or more of Mr. Klipp's actual duties, he would likely have satisfied the hazardousness test, since he was authorized to carry a firearm.

We reiterate that the Board was "not free to refuse to follow circuit precedent," and to do so constituted error. *E.g.*, *In re Sang Su Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002) (quoting *Nat'l Lab. Rels. Bd. v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74, 75 (9th Cir. 1987)); *id.* at 1346 ("Sound administrative procedure requires that the agency apply the law in accordance with statute and precedent."). Under these circumstances, we must vacate the Board's decision and remand for further proceedings. *E.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case."); *Mullins*, 50 F.3d at 992 ("[F]ailure to provide [] an explanation [for departing from governing law] is grounds for striking down the action.").

We finally note that at oral argument, the parties appeared to agree that consolidation of this proceeding with the other pending Board proceeding would be desirable. On remand, we urge the parties to consider how such consolidation might be accomplished.

## CONCLUSION

For the foregoing reasons, we vacate the agency's decision and remand for proceedings consistent with this opinion.

### VACATED AND REMANDED

#### COSTS

Costs to appellant.